# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 19, 2013                Decided April 1, 2014

No. 06-3166

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTHONY RICE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03-cr-00441-08)

*Jenifer Wicks*, appointed by the court, argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney. *Suzanne Grealy Curt* and *Mary B. McCord*, Assistant U.S. Attorneys, entered appearances.

Before: BROWN and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

GRIFFITH, *Circuit Judge*: Appellant Anthony Rice appeals his convictions on drug conspiracy charges on the

ground that the 26-month delay between his arrest and the start of his trial violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and the Sixth Amendment. For the reasons set forth below, we reject his challenge and affirm the district court.

I

In June 2002, the Metropolitan Police Department and the FBI began a joint investigation of a drug distribution network led by one Raven Carroll. The investigation uncovered a complex, international scheme that imported drugs into the Washington, D.C. area from several Caribbean and South American countries, including the Dominican Republic. Wiretaps conducted by Dominican authorities implicated a number of individuals living outside the United States. Wiretaps conducted by U.S. authorities incriminated numerous U.S. participants, including Rice, whose role in the enterprise was to help test the quality of drugs and serve as one of Carroll's distributors.

By October 2003, U.S. authorities had amassed enough evidence to charge Rice and eighteen others with two counts of conspiracy relating to drug importation and distribution. Rice, along with most of his codefendants, was arrested and arraigned on November 12, 2003. Six foreign codefendants, however, remained outside the country, two at large and four under arrest and awaiting extradition.

Although the Speedy Trial Act requires trial to begin within 70 days of arraignment, the court may push back the start of the trial when "the ends of justice" so require. 18 U.S.C. § 3161(h)(7)(A). In a motion that Rice did not oppose, the government argued that the case was too complex to be ready for trial within the 70 days called for in the Act and

asked for a 270-day "ends-of-justice continuance." The government cited the large number of defendants, the international scope of their drug operation, and the sheer volume of evidence. For example, there were thousands of hours of taped Spanish-language conversations that would need to be transcribed into Spanish and then translated into English. On December 19, 2003, the district court held a hearing on the motion and granted the continuance. (Although the record is unclear, for purposes of this opinion we accept Rice's contention that the district court intended the 270-day continuance to begin running immediately.)

In June 2004, partway through the 270-day continuance, the district court *sua sponte* raised the idea of severing the case to expedite proceedings. The court suggested that those defendants allegedly involved in the domestic aspects of the conspiracy could be tried separately from those allegedly involved in its international reach, some of whom still had not been extradited. The government conceded such a severance would be workable, but the court took no action on the issue at that time. The court floated the possibility of severance again in July, and once again the government thought it a good move. On neither occasion did any of the defendants request or oppose severance. On August 17, 2004, the court entered a written order severing the case in two and establishing preliminary schedules for motions and the trials. Rice was among the domestic defendants, whose joint trial was scheduled to begin in January 2005.

For a variety of reasons the trial did not actually begin until January 2006. The delays started with the court granting the motion of one of Rice's codefendants, Roland Bailey, to postpone the trial until May 2005 so that he could obtain new counsel. Then, shortly before the new start date, Rice's attorney announced that he would not be available for several

days in early June. To avoid such a disruption in the middle of a trial expected to last several weeks, Rice's lawyer agreed that the start of trial should be set for late June. But shortly before that new start date, the government voiced concern that the trial might run through late August and conflict with other trials on the court's schedule. In response, the court explained that if the trial did not begin in late June, it would need to be postponed until January 2006 to accommodate the court's schedule. The government and Rice agreed, though Bailey did not, that starting the trial in January 2006 was best, and so the court once again moved back the start date.

As it turned out, only Rice and Bailey went to trial, all their codefendants having pled guilty. On January 4, 2006, the district court heard the last pending pretrial motion: an attempt to suppress the wiretap evidence against Rice and Bailey. The court denied the motion that day. Jury selection began that afternoon and continued on to the next day. Presentation of evidence started on January 9. After a five-week trial, Rice was convicted on both counts. Later that year he was sentenced to life imprisonment. (Bailey was convicted on a separate possession charge but not on the conspiracy charges.) Rice filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

II

Rice argues that his conviction violated the Speedy Trial Act, which "requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." *Henderson v. United States*, 476 U.S. 321, 326 (1986). *See generally* 18 U.S.C. §§ 3161-3162. Time can be excluded from the 70-day clock for a variety of reasons, but only two are relevant to this case. First, as noted, a court can grant an

ends-of-justice continuance. Second, the filing of pretrial motions stops the clock.

We review Speedy Trial Act challenges de novo on matters of law, and for clear error as to findings of fact. *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008).[*] Our review does not entail examining the entire 26-month period between Rice's arrest and the start of trial and categorizing each day as excludable or nonexcludable. Instead, the Act places the burden of identifying violations on the defendant. 18 U.S.C. § 3162(a)(2); *see also Zedner v. United States*, 547 U.S. 489, 502-03 (2006) ("[Section] 3162(a)(2) assigns the role of spotting violations of the Act to defendants—for the obvious reason that they have the greatest incentive to perform this task."). Accordingly, our review is limited to examining the particular periods of time that Rice alleges contained, in total, over 180 days that should not have been excluded from the district court's calculation of the 70-day clock. *See* Appellant's Br. 39-41. For ease of analysis, we consolidate the various intervals Rice highlights into two periods and address them in the following two subsections.

---

[*] Because Rice did not make the specific arguments he raises on appeal in his pretrial motion to dismiss (at least not in the motion to dismiss included in the record before us), we should arguably either deem his claims waived or review only for plain error. *See United States v. Loughrin*, 710 F.3d 1111, 1121 (10th Cir. 2013) (specific Speedy Trial Act arguments not raised below are waived); *United States v. O'Connor*, 656 F.3d 630, 637-38 (7th Cir. 2011) (specific Speedy Trial Act arguments not raised below are reviewed at most for plain error); *cf. United States v. Taylor*, 497 F.3d 673, 676 & n.3 (D.C. Cir. 2007). But the government has not argued waiver or forfeiture, and Rice has not had an opportunity to contest whether he properly preserved his claims; therefore, we assume that the normal standard of review applies.

6

A

Rice first focuses on the period from January to July 2004. Rice claims that even after accounting for time properly excluded by the filing of pretrial motions, this period contained 104 days that should not have been excluded. This entire period, however, falls within 270 days of the grant of the ends-of-justice continuance. If the continuance was valid, the entire period was properly excluded. Acknowledging this hurdle, Rice argues that the continuance was both substantively and procedurally flawed.

A district court can, on its own motion or at the request of a party, grant an excludable continuance if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion. *See United States v. Kelley*, 36 F.3d 1118, 1126 (D.C. Cir. 1994); *see also, e.g.*, *United States v. Clark*, 717 F.3d 790, 822 (10th Cir. 2013). But this "substantive openendedness" is balanced by "procedural strictness." *Zedner*, 547 U.S. at 509. An ends-of-justice continuance is excludable only if the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The court's findings must indicate that it "seriously weigh[ed] the benefits of granting the continuance against the strong public and private interests served by speedy trials." *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008); *see also United States v. Sanders*, 485 F.3d 654, 659 (D.C. Cir. 2007) (holding ends-of-justice findings insufficient "insofar as the

district court made no mention of the countervailing interests").

In making its substantive judgment, a court considers several factors, including the complexity of the case. *See* 18 U.S.C. § 3161(h)(7)(B). Rice does not quarrel with the obvious: With 19 codefendants, a conspiracy spanning multiple states and countries, hundreds of hours of wiretaps (many in Spanish), the case—considered in its entirety—was sufficiently complex to justify the continuance. *See id.* § 3161(h)(7)(B)(ii) (indicating that a continuance can be justified if the case is especially "unusual" or "complex").

But, Rice argues, the court should *not* have considered the case in its entirety. Instead, the court should have recognized that it could have rendered the 270-day continuance unnecessary by severing the domestic defendants initially. The case against them alone, Rice says, would have been quite simple because the foreign wiretaps would have been irrelevant. But, of course, at the time the district court granted the continuance, it acted under the assumption that the entire case would proceed toward trial intact. No party, including Rice, moved for a severance, either before or after the continuance was granted. At bottom, then, Rice's argument is that the district court had an obligation to sever the case *sua sponte*, and abused its discretion by failing to do so before granting the continuance. We think not. To start, there is a preference for joint trials in the federal courts. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Although that preference can give way in the face of certain circumstances, *see, e.g.*, *United States v. Gray*, 173 F. Supp. 2d 1, 8 (D.D.C. 2001) (citing "the protection of the rights of the defendants and the physical limitations of the courthouse"), we do not see any here that would have required the district court to sever the case before it granted

the continuance on December 19, 2003. That none of the defendants sought a severance shows that none thought it was required. With 20/20 hindsight, severing the domestic from the international defendants at the outset might appear to have been the best way to proceed, but that hardly suggests the district court abused its discretion in failing to do so at the time and *sua sponte*.

Rice also contends that the continuance was procedurally invalid, claiming the district court's on-the-record findings were insufficient. Again, we disagree. As noted, our fundamental concern is that the findings reveal that the court "seriously weigh[ed]" the need for delay against the interests in a speedy trial. *Bryant*, 523 F.3d at 361. The district court's lengthy contemporaneous oral findings, which explained in detail why the complexity of the case made a continuance appropriate, satisfy us that it seriously weighed these competing interests. The court began by noting the general need "to get cases to trial as quickly as possible." But it explained that delay was justified because of the large number of defendants, the many hours of wiretaps to be transcribed and translated, and the absence of certain defendants still awaiting extradition. The court plainly took the defendants' interests into consideration, noting, for example, "that the defense itself is not going to be in a position to adequately provide the quality of representation the defendants are entitled to, unless they know exactly what is on those [wiretap] disks." True, the district court did not recite the statutory formulation, but the findings requirement does not call for magic words. The findings here are far more indicative of serious weighing than are those in cases where the district court does little more than rehearse the words of the statute. *See, e.g.*, *United States v. Lucas*, 499 F.3d 769, 782-83 (8th Cir. 2007) (upholding such findings).

The findings here were also a far cry from those we found insufficient in *Sanders* and *Bryant*, the two cases on which Rice relies most heavily. In *Sanders*, we examined a period of time that the district court had originally expected to be excluded by the filing of certain defense motions. But those motions were ultimately never filed. It was only after the period had passed, in the course of denying a motion to dismiss under the Act, that the district court suggested the period was excluded by an ends-of-justice continuance. Its "findings" were simply a statement that it had originally expected the defense to file the motions and "[s]o on some rough justice basis, it seems to me, it is in the interest of justice to [exclude] those 15 days." *Sanders*, 485 F.3d at 659. The findings in *Bryant* were similarly ad hoc. When faced with a motion to dismiss under the Act, the judge, who acknowledged that he was working from memory, not transcript, said he "thought he had probably made a finding" that an earlier period of time was excluded in the interests of justice because of the need to coordinate the schedules of the lawyers and the court. *Bryant*, 523 F.3d at 360 (internal quotation marks omitted). In neither case could we be satisfied that the district court had seriously weighed the relevant interests. By contrast, the district court's findings in this case reflect a considered, prospective judgment that the complexity of the case called for the continuance.

The findings here are closer to those we upheld in *United States v. Lopesierra-Gutierrez*, 708 F.3d 193 (D.C. Cir. 2013). Our review in that case was complicated by the fact that the district court order setting down the findings had gone missing. *Id.* at 204. We were able to reconstruct the court's reasoning, however, because later filings established the existence of the order. Those later filings made clear that the order had cited the complexity of the case, the volume of discovery, and the need to bring foreign defendants and

witnesses to the United States—substantially the same circumstances the district court noted in its findings here. *See id.* (describing these as "perfectly adequate reasons for granting a stay"). The findings in the present case are as thorough as those we could infer in *Lopesierra-Gutierrez*.

Because the district court's grant of the 270-day ends-of-justice continuance was both substantively and procedurally valid, we conclude that the district court properly excluded the 104 days between January and July 2004 that Rice alleges should have been counted under the Act.

B

The second period in question covers late June 2005 to January 2006, when trial began. Rice argues that after accounting for properly excluded days, this period still contained 83 days that should not have been excluded for any reason. Once again, however, the entire period in question was properly excluded—this time by the pendency of a pretrial motion that was not heard until January 4, 2006.

The Act automatically excludes at least some of the time it takes the district court to decide a pretrial motion. 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). *See generally Van Smith*, 530 F.3d at 969. The amount of time excluded depends in part on whether the district court holds a hearing on the motion. If the court holds a hearing, the Act excludes the period of time between the filing of the motion and the conclusion of the hearing, whether or not the amount of delay that occurred was "reasonable." *Henderson*, 476 U.S. at 326-27. If the court does not hold a hearing on the motion, the Act excludes the

period of time between the filing of the motion and the day the court receives all the submissions it reasonably expects in relation to the motion. *Van Smith*, 530 F.3d at 969. After the court receives the necessary papers, the motion is considered "under advisement by the court," and up to 30 additional days may be excluded while the court considers the matter. 18 U.S.C. § 3161(h)(1)(H).

At a status conference on May 23, 2005, the district court catalogued the remaining defendants' unresolved pretrial motions. Among Rice's was "a motion to suppress all of the electronic surveillance evidence," which Rice's counsel acknowledged and agreed was still pending. And again, on June 27, 2005, the court noted that "we have a motion to suppress the electronic surveillance evidence filed by Mr. Rice." We cannot discern from the record precisely when Rice filed this motion, but its murky origins need not concern us, because the court held a hearing to consider its merits on January 4, 2006. (The court denied the motion that day.) Even if we assume that Rice did not file this motion until May 23, 2005, the entire period from that day until the day of the hearing would be excluded. Regardless of whether the district court could have held a hearing on this motion earlier—the record does not make clear why it did not—the entire period of the motion's pendency is excluded. *See Henderson*, 476 U.S. at 330. Therefore, the various days between late June 2005 and January 2006 that Rice claims were nonexcludable were in fact properly excluded.

III

Rice brings a constitutional challenge as well, contending that the delay between his arrest and trial violated his Sixth Amendment right to a speedy trial.

The government argues that Rice forfeited this claim by failing to raise it before the district court. We agree. Though Rice argues that he "continuously asserted both his statutory and constitutional rights to a Speedy Trial," he fails to offer any supporting record citations. Appellant's Reply Br. 12. We can find no evidence in the record that Rice ever made a Sixth Amendment argument before the district court, and Speedy Trial Act claims do not on their own preserve a constitutional claim to a speedy trial. *See United States v. Green*, 516 F. App'x 113, 124 (3d Cir. 2013); *United States v. Woodley*, 484 F. App'x 310, 318 (11th Cir. 2012); *United States v. O'Connor*, 656 F.3d 630, 643 (7th Cir. 2011). We therefore review Rice's constitutional argument for plain error. Under that standard of review, Rice must demonstrate that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (internal quotation marks and brackets omitted).

The absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim. *See* 18 U.S.C. § 3173. But as a number of courts have noted, it will be an "unusual case" in which the Act is followed but the Constitution violated. *See, e.g.*, *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002); *United States v. Davenport*, 935 F.2d 1223, 1238-39 (11th Cir. 1991); *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). Even more exceptional must be the case in which the Act is followed but there is a "clear or obvious" Sixth Amendment error. Our analysis of Rice's prosecution in light of the four

factors enumerated in *Barker v. Wingo*, 407 U.S. 514 (1972), convinces us this is not that rare case.

*Barker* teaches that in assessing whether the Sixth Amendment has been violated, we consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. The government concedes, and we agree, that the delay here was long enough to trigger *Barker* analysis, *see Doggett v. United States*, 505 U.S. 647, 651-52 (1992), but it remains shorter than others that we have upheld against challenge, *see Lopesierra-Gutierrez*, 708 F.3d at 202-03 (delay of three-and-a-half years); *see also Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). The second factor, which asks "whether the government or the criminal defendant is more to blame for [the] delay," *Doggett*, 505 U.S. at 651, also yields a mixed answer. *See supra* at 3-4 (describing the delays). Some of the delay, such as the initial ends-of-justice continuance and the continuance for codefendant Bailey to obtain new counsel, was fully justified and cannot be "blamed" on either the government or Rice; some was caused by Rice's lawyer's scheduling decisions and is attributable to Rice, *see Vermont v. Brillon*, 129 S. Ct. 1283, 1290-92 (2009); and some was due to the court's trial schedule, which is ultimately attributable to the government, *see Barker*, 407 U.S. at 531. The third factor, the defendant's assertion of his right, cuts decidedly against Rice because he did not raise any Speedy Trial Act challenge until nearly a year after his arraignment, and, as noted earlier, never alleged a Sixth Amendment violation. His counsel orally raised vague Speedy Trial Act concerns on two occasions after moving to dismiss, but he also expressly agreed to the last two postponements of the trial. Finally, although Rice suffered lengthy "pretrial

incarceration" and "anxiety and concern," he does not even attempt to argue that he suffered "the most serious" form of prejudice: the impairment of his defense. *Id.* at 532.

Taken together, the four factors suggest that Rice would have at least a debatable, if not persuasive, Sixth Amendment claim under de novo review. But in light of Rice's forfeiture, we can reverse only for plain error, and we cannot conclude that the *Barker* analysis demonstrates a "clear or obvious" constitutional error in this case. *Marcus*, 130 S. Ct. at 2164. Because any error was not "clear or obvious," we need not address the other requirements for relief under plain error review.

## IV

For the foregoing reasons, we reject Rice's Speedy Trial Act and Sixth Amendment challenges and affirm his convictions.