# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00501-SCT

*JAMES ROBERT ROWSEY a/k/a JAMES R.*
*ROWSEY a/k/a JAMES ROWSEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2014 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | DAVID C. FUTCH |
| | JOSEPH W. GRIFFIN |
| | ROBERT J. KNOCHEL |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| | JAMES ROBERT ROWSEY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. On February 25, 2014, James Rowsey was convicted of aggravated assault in the Circuit Court of Greene County for throwing scalding water on a fellow inmate at the South Mississippi Correctional Institution. Rowsey was sentenced to serve ten years of incarceration to run consecutively to the life sentence he already was serving for murder. Finding no error, we affirm Rowsey's conviction and sentence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     On January 28, 2010, James Rowsey was imprisoned at the South Mississippi Correctional Institution in Leakesville, serving a life sentence for murder. During the course of the day, Rowsey became concerned that Fate Santee, a man who was assigned to a bed, or "rack," near Rowsey's and who was associated with the Crips,[1] a gang, was going to beat him up.  As Santee was resting on his assigned rack, Rowsey heated up two cups of water in a microwave oven.  Rowsey then walked back to the racks and dumped the hot water on Santee's head.

¶3.     Santee was severely injured by the attack.  He was moved from the prison's infirmary to the burn center at River Oaks Hospital in Flowood. Santee had burns on his trachea, face, and shoulders, which required treatments that included skin grafts, a tracheotomy, and the use of a feeding tube.

¶4.     On February 22, 2011, a Greene County grand jury returned an indictment against Rowsey for aggravated assault.  On May 16, 2011, Rowsey appeared before the Greene County Circuit Court for arraignment.  He informed the court that he could not afford an attorney.  The circuit court judge appointed Brandy Hambright, the public defender for Greene County, to represent Rowsey. On May 17, 2011, Rowsey signed a waiver of his right to an arraignment.

¶5.     That same day, May 17, 2011, Rowsey sent a complaint to the Mississippi Bar, in which he protested Hambright's recommendation that he waive arraignment.  Rowsey sent

---

[1] The gang is referred to as the "Crypts" in the transcript.

a similar letter to the Mississippi Bar on May 25, 2011, in which he informed the Bar that "[t]here is no need for a District Attorney. My attorney and the Court are prosecutors." (Emphasis in original.) As a result of Rowsey's letters to the Mississippi Bar and the Bar's conclusion that this matter was a "communication situation between a client and an attorney," on June 6, 2011, Hambright filed a motion to withdraw as Rowsey's attorney.

¶6. On July 26, 2011, the Greene County Circuit Court granted Hambright's motion to withdraw as counsel and appointed attorney David Futch to represent Rowsey. Although trial had been scheduled for August 8, 2011, Rowsey was not transported from prison to the courthouse. The trial court ordered a continuance on this basis. On September 27, 2011, Rowsey's counsel filed a motion for a continuance, averring that he had not been given discovery by the State. On November 28, 2011, the State filed a motion for a continuance, which was granted. The reason the State needed this continuance is not apparent from the record. On February 21, 2012, the State requested a continuance because the prosecuting attorney had a "personal medical problem in his family." This continuance was granted.

¶7. On May 15, 2012, the parties made a joint *ore tenus* motion to reset the trial in the case, which the trial court granted. On the defendant's motion, on June 5, 2012, the trial court ordered that Rowsey should be given a mental evaluation at the State Hospital at Whitfield, Mississippi's mental hospital.

¶8. On November 19, 2012, the court ordered another continuance because the State Hospital at Whitfield had not yet performed Rowsey's mental examination. On December 4, 2012, Rowsey's defense counsel advised the circuit judge that Rowsey had not yet been

3

scheduled for an evaluation at the State Hospital. On February 11, 2013, the trial court ordered another continuance because Rowsey still was waiting to get a mental examination. After the circuit court ordered that Rowsey be provided public funds for evaluation by a private doctor, Dr. Criss Lott, a psychologist, completed Rowsey's mental examination on May 17, 2013.

¶9.     On June 27, 2013, Futch filed a motion to withdraw as Rowsey's counsel, stating that he had been "continually berated and harassed" by Rowsey and that Rowsey had filed a complaint against him with the Mississippi Bar. Futch asserted that "the Defendant has filed numerous motions and filings and will not follow any guidance whatsoever from the attorney and has created such a state of conflict that the appointed attorney cannot effectively represent the best interest[s] of . . . [Rowsey] in any manner." Further, Futch averred that "[b]ased upon the attorney's and the Defendan[t]'s feelings and animosity against each other[,] . . . a conflict of interest has developed that is insurmountable." The trial court did not rule on this motion.

¶10.    Also, on June 28, 2013, Rowsey entered into an agreed motion for a continuance, because Dr. Lott had not yet completed his written report about Rowsey's mental evaluation. On August 8, 2013, Dr. Lott completed his mental evaluation report. On August 19, 2013, Rowsey's counsel requested another continuance, saying that he had not had time to review Dr. Lott's report.

¶11.    Prior to trial, Rowsey asserted his right to a speedy trial on multiple occasions. He first did so in a *pro se* pleading filed on April 25, 2011, before he had waived his

4

arraignment. Rowsey's trial counsel, Futch, invoked Rowsey's speedy trial rights in a motion for discovery filed on September 21, 2011. On February 10 and 21, 2012, Rowsey filed *pro se* motions to dismiss the indictment against him because he had been deprived of his constitutional right to a speedy trial. The trial court never ruled on those motions. When given an opportunity to argue these motions before the trial court, Rowsey's trial counsel asserted that "I've reviewed most of his motions. . . . I have no reasonable legal basis to argue them."

¶12. Rowsey's trial was scheduled to commence on November 12, 2013, with Futch serving as Rowsey's court-appointed counsel. However, before *voir dire* examination, ten to fifteen potential jurors saw Rowsey being escorted by South Mississippi Correction Institution officers in his yellow prison jumpsuit, chains, and shackles, leading to concerns by the circuit clerk and defense counsel that the jury would be prejudiced against Rowsey. Consequently, Rowsey's trial counsel requested a new trial on a different date, which resulted in another continuance.

¶13. Rowsey's trial commenced on February 24, 2014, forty-nine months after the incident, thirty-six months after indictment, and thirty-three months after arraignment. On February 25, 2014, the jury returned a guilty verdict against Rowsey for aggravated assault against Santee. The Greene County Circuit Court sentenced Rowsey to ten years of incarceration to run consecutively to the life sentence he was serving for murder.

¶14. On appeal, Rowsey's counsel, who was appointed from the Indigent Appeals Division of the Office of the State Public Defender, raises two issues:

I.      **Whether the trial court erred by failing to dismiss the indictment against Rowsey because he had been deprived of [his] constitutional right to a speedy trial.**

II.     **Whether the trial court erred by failing to dismiss the indictment against Rowsey because his statutory right to a speedy trial had been violated.**

¶15.    Rowsey has filed a *pro se* supplemental appellant's brief, in which he raises the following issues:

III.    **Whether Rowsey's counsel was constitutionally ineffective.**

IV.     **Whether Rowsey's trial counsel had an actual conflict of interest, rendering him ineffective under this Court's precedent in *Kiker v. State*, 55 So. 3d 1060 (Miss. 2011).**

V.      **Whether Rowsey was forced to testify at trial in violation of his constitutional rights.**

VI.     **Whether the trial court erred in sanctioning Rowsey for filing his "Defendant's Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof."**

VII.    **Whether the record on appeal is incomplete or tainted.**

### DISCUSSION

I.      **Whether the trial court erred by failing to dismiss the indictment against Rowsey because he had been deprived of constitutional right to a speedy trial.**

¶16.    The right to a speedy trial is secured by the Sixth Amendment to the United States Constitution:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the

6

accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The Mississippi Constitution also secures the right to a speedy trial by jury:

> In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed.

Miss. Const. art. 3, § 26.

¶17.    In analyzing constitutional speedy trial claims, we apply the four-part test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which balances: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. The *Barker* Court explained that each case should be considered on an "ad hoc basis" and that no one factor is outcome determinative. *Id.* at 530. The Court wrote:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Id.* at 533.

¶18.  This Court's standard of review for speedy trial challenges is as follows:

> Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court

> will uphold a decision based on substantial, credible evidence. *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991). If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. [*Id.*]

*DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998).

¶19.    According to our speedy trial case law, the State bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of nonpersuasion. *Flores v. State*, 574 So. 2d 1314, 1318 (Miss. 1990). The burden does not rest with the defendant to prove that the delay was caused by the Government's bad faith. *See id.*; *accord Vickery v. State*, 535 So. 2d 1371, 1375 (Miss. 1988) ("[W]here the record is silent regarding the reason for delay, as the record is silent here, the clock ticks against the State because the State bears the risk of non-persuasion on the good cause issue.").

¶20.    Thus, in cases such as this, in which the defendant asserts his speedy trial right but the trial court has not held an adequate hearing on the issue, this Court has two options: (1) decide the case based on a *de novo* review of the record before us, if good cause for the delay is apparent, or (2) remand the case to the circuit court to allow the State to present evidence explaining the delay and to conduct a proper *Barker* analysis. *Meyers v. State*, 145 So. 3d 1143, 1151-52 (Miss. 2014). In this case, the Court is able to determine that good cause exists in the record which explains the delay between Rowsey's indictment and trial. Thus, it is not necessary for this Court to remand this case to the trial court for a speedy trial analysis.

¶21.    In two cases, *Wells v. State*, 160 So. 3d 1136, 1146-47 (Miss. 2015) and *Kolberg v. State*, 829 So. 2d 29, 88 (Miss. 2002), we held that a criminal defendant's failure to obtain

8

a ruling from the trial court on his or her speedy trial motion constitutes a waiver of his or her constitutional speedy trial right.[2] *Wells*, 160 So. 3d at 1146-47 ("[I]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same. This includes speedy-trial motions.") (internal citations omitted); *Kolberg v. State*, 829 So. 2d at 88 ("It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and a failure to do so constitutes a waiver of the same.") (quoting *Rushing v. State*, 711 So. 2d 450, 456 (Miss. 1998)). However, these cases are in disagreement with the United States Supreme Court's decision in *Barker*. In *Barker*, the United States Supreme Court held that "[w]e reject . . . the rule that a defendant who fails to demand a speedy trial forever waives his right." *Barker*, 407 U.S. at 529. The Court asserted that "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.*

¶22.    *Wells* and *Kolberg* not only contravene the United States Supreme Court's holding in *Barker*, they also are in conflict with our own precedent. *See Myers v. State*, 145 So. 3d at 1151. Thus, insofar as *Wells* and *Kolberg* hold that a defendant can waive his or her right to a speedy trial by failing to obtain a ruling on his or her motion for a speedy trial in the trial court, we overrule those cases.

---

    [2] A defendant may waive his or her right to a speedy trial if the defendant makes a knowing and intelligent waiver of this right. *See Berry v. State*, 728 So. 2d 568, 570 (Miss. 1999) ("[T]he right to a speedy trial is a fundamental constitutional right, and a defendant may only waive her speedy trial right by knowing and intelligent waiver."). For example, if a defendant enters a plea of guilty in the trial court, he or she must knowingly and intelligently waive his or her right to a speedy trial.

¶23. The opinion written by Justice Pierce concurring in result only, relies on ***Dora v. State***, 986 So. 2d 917 (Miss. 2008), to suggest that we should abrogate ***Wells*** and ***Kolberg*** and instead adopt a "plain error" review standard. With respect, this would not be the wisest course of action for many reasons. First, ***Dora*** addresses only "when the constitutional speedy-trial issue is raised for the first time on appeal." ***Dora***, 986 So. 2d at 924. This is not the situation here. Rowsey raised the issue in the trial court and the trial court did not rule on his claim. Thus, ***Dora*** is not controlling. Further, Justice Pierce's opinion's proposed rule serves only to prejudice the State. It is well settled that any unexplained trial delay tolls heavily against the State, not against the defendant. ***Vickery***, 535 So. 2d at 1375. Thus, under Justice Pierce's opinion's "plain error review," any ambiguities in the record must be counted heavily against the State. However, under the ***Myers*** dichotomy, if good cause for the trial delay is apparent, we can render a decision in favor of the State on that basis. If good cause is not apparent in the record, there is a mechanism to remand for an evidentiary hearing whereby the State has the opportunity to provide an explanation for the delay and the trial court has the freedom of an independent consideration of the ***Barker*** factors.

*(1) Length of the Delay*

¶24. The constitutional right to a speedy trial attaches "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." ***Handley v. State***, 574 So. 2d 671, 674 (Miss. 1990) (quoting ***Lightsey v. State***, 493 So. 2d 375, 378 (Miss. 1986)), *superseded by statute on other grounds*. Rowsey was indicted on February 22, 2011. His trial began on February 24, 2014. Some 1,099 days, or thirty-six

months, passed between Rowsey's arrest and his indictment. This Court has held that a delay of eight months is presumptively prejudicial. *Johnson v. State*, 68 So. 3d 1239, 1244 (Miss. 2011). The United States Supreme Court has held that "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). In this case, the delay of 1,099 days, or thirty-six months, between Rowsey's indictment and trial was presumptively prejudicial.

   *(2) Reason for the Delay*

¶25.   As for *Barker*'s second criterion, "different weights should be assigned to different reasons [for delay]." Delays caused intentionally by the State for the purpose of depriving a criminal defendant of his or her constitutional rights are weighed heavily against the State. *Barker*, 407 U.S. at 531. Delays for good cause, for instance, a continuance for the purpose of finding a missing witness, are weighed less heavily against the State. *Id.* Moreover, continuances sought on behalf of the defendant toll the speedy trial clock. *Vickery*, 535 So. 2d at 1375.

¶26.   In this case, it is clear that the lion's share of the delay in Rowsey's trial was attributable to Rowsey's unwarranted harassment of his original trial counsel and the substantial amount of time it took to schedule a mental evaluation to prepare Rowsey's defense. In light of these considerations, the reason for the delay cannot be weighed against the State.

   *(3) Whether the defendant asserted his right to a speedy trial*.

11

¶27. Prior to trial, Rowsey frequently invoked his right to a speedy trial. He first asserted his right to a speedy trial in a *pro se* pleading, before he waived his arraignment, on April 25, 2011. Rowsey's trial counsel invoked Rowsey's speedy trial rights on September 21, 2011. Rowsey subsequently filed *pro se* motions to dismiss the indictment against him because he had been deprived of his constitutional right to a speedy trial on February 10, 2012, and on February 21, 2012.

¶28. However, it cannot be ignored that Rowsey invoked his speedy trial rights and filed motions to dismiss the indictment against him while he simultaneously was seeking continuances to accommodate his mental evaluation. In **Franklin v. State**, 136 So. 3d 1021 (Miss. 2014), this Court held: "The right, in this case, is the right to a speedy trial. An assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant's assertion of his speedy trial rights should manifest 'his desire to be tried promptly.'" **Franklin**, 136 So. 3d at 1035 (quoting **United States v. Frye**, 489 F. 3d 201, 211-12 (5th Cir. 2007)). Thus, it is not enough that a defendant simply would like the indictment against him to be quashed. Instead, the invocation of the right to a speedy trial is actually a request to go to trial. *See id.* Here, Rowsey could not go to trial because he was waiting for the mental evaluation that he requested, which was key to preparing his trial defense. Therefore, although he invoked his right to a speedy trial, it cannot be argued that Rowsey manifested the "desire to be tried promptly." **Franklin**, 136 So. 3d at 1035 (quoting **Frye**, 489 F. 3d at 212).

(4) Prejudice to the Defendant

12

¶29. The United States Supreme Court has held that unreasonable pretrial delay threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. *Barker*, 407 U.S. at 532. Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

¶30. In this case, it was not established that Rowsey actually was prejudiced by the delay in his trial date. Because he was serving a life sentence for murder, his pretrial incarceration was not related to his aggravated assault charge. Moreover, on the witness stand, Rowsey confessed to the aggravated assault and claimed that he had acted in self defense. There is not much concern in this case regarding dimming memories or dissipating evidence. Finally, Rowsey's counsel needed the continuances to prepare his defense. If he had received a speedier trial, Rowsey would not have had the benefit of the results of his mental examination. Stated differently, Rowsey's defense would have suffered detriment if the delay had not occurred.

¶31. Even though 1,099 days passed between Rowsey's indictment and trial, a fair analysis of the *Barker* factors establishes that Rowsey's constitutional right to a speedy trial was not violated.

    **II.    Whether the trial court erred by failing to dismiss the indictment against Rowsey because his statutory right to a speedy trial had been violated.**

¶32. In addition to their constitutional rights to a speedy trial, criminal defendants in Mississippi have a statutory right to a speedy trial. This right is contained in Section 99-17-1 of the Mississippi Code, which provides: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2015). Thus, unlike the constitutional right to a speedy trial which attaches at the time of arrest or indictment, *Handley*, 574 So. 2d at 674, the statutory speedy trial right attaches at arraignment. Miss. Code Ann. § 99-17-1. Some 1,014 days elapsed between the time Rowsey waived his arraignment and his trial. However, the delay in this case was due to good cause, namely, that Rowsey was awaiting a mental examination at the State Hospital. Thus, Rowsey's statutory right to a speedy trial has not been violated.

**III.    Whether Rowsey's counsel was constitutionally ineffective.**

¶33. In his *pro se* brief, Rowsey argues that both his appointed trial counsel and his appointed appellate attorney were ineffective.

¶34. A defendant in a criminal case is entitled, under both the United States and Mississippi Constitutions, to effective assistance of counsel. U.S. Const. amend. VI; U.S. Const. amend. XIV; Miss. Const. art. 3, § 26; *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland v. Washington*, the United States Supreme Court articulated the test for considering a constitutional claim of ineffective assistance of counsel. First, the court must determine whether the defendant received reasonably effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. Second, if it is

14

determined that the defendant did not receive reasonably effective assistance of counsel, the reviewing court must determine whether this insufficiency had a "reasonable probability" of affecting the outcome of the case. *Id.* at 695. A "reasonable probability" means that the confidence of the court in the outcome is undermined, not a certainty that the verdict would have been different. *Id.*

¶35.    Generally, ineffective-assistance claims are raised during post-conviction proceedings. *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008). However, a claim of ineffectiveness may be raised on direct appeal "if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b).

¶36.    In order to receive relief for a claim of ineffective assistance of counsel, Rowsey must establish that his trial counsel's representation was deficient.  First, Rowsey argues that his trial counsel, David Futch, requested and agreed to continuances during the time Rowsey was waiting for his mental evaluation and report.  Rowsey argues that, in so doing, Futch infringed upon his right to a speedy trial. No evidence in the record supports that Rowsey's counsel was deficient for this reason or any other.  Thus, this claim is not appropriate for this Court's consideration on direct appeal.

¶37.    Rowsey further argues that Futch was deficient in advising Rowsey to testify in his own defense.  In *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) this Court held that:

> Judicial scrutiny of counsel's performance must be highly deferential. [citation omitted] . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

15

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Advising Rowsey to testify in his own defense clearly falls within the ambit of trial strategy.

Thus, Rowsey cannot prove that his counsel was deficient for this reason and therefore is not entitled to relief on the basis of ineffective assistance of counsel.

¶38. Rowsey also argues that his original appointed counsel, Brandy Hambright, was ineffective because she advised him to waive his arraignment. It is not reasonable to argue that a trial counsel's advice to waive arraignment is *per se* ineffective. Moreover, even if this advice proved to be deficient in this instance, Rowsey offers no argument regarding its impact on his conviction. Thus, Rowsey's argument regarding Hambright's ineffectiveness is without merit.

¶39. Finally, Rowsey argues that his appointed counsel on appeal was ineffective because she raised only arguments related to Rowsey's right to a speedy trial. In ***Burns v. State***, 813 So. 2d 668, 680 (Miss. 2001), this Court held that "[c]hoosing which issues to raise and which to omit [on appeal] is a matter of strategy which should be left to an attorney's discretion." Here, it is not reasonable to argue that Rowsey's counsel was ineffective in presenting only arguments related to Rowsey's speedy trial claims. This is especially true in light of the fact that none of the other claims presented by Rowsey in his *pro se* brief on appeal is meritorious.

> **IV. Whether Rowsey's trial counsel had an actual conflict of interest, rendering him *per se* ineffective under this Court's precedent in *Kiker v. State*, 55 So. 3d 1060 (Miss. 2011).**

¶40. Further, in his *pro se* brief, Rowsey argues that his counsel was *per se* ineffective because his counsel had an actual conflict of interest.

¶41. In *Kiker v. State*, 55 So. 3d 1060 (Miss. 2011), this Court held that when a criminal defendant is represented by counsel with an actual conflict of interest, it is *per se* ineffective assistance of counsel. *Kiker*, 55 So. 3d at 1067 (¶ 19). This Court further held that:

> "In all criminal prosecutions, the accused shall enjoy the right . . . . to have Assistance of Counsel for his defence." U.S. Const. amend. VI. *See also* Miss. Const. art. 3, § 26 ("In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both . . . . ") "[A]dept representation encompasses two broad principles: minimum competence and loyal assistance." *Armstrong v. State*, 573 So. 2d 1329, 1331 (Miss. 1990) (citation omitted). Moreover, constitutional guarantees of due process of law require undivided loyalty of defense counsel. *Littlejohn v. State*, 593 So. 2d 20, 23 (Miss. 1992) (citing U.S. Const. amend. V); *United States v. Alvarez*, 580 F. 2d 1251, 1256 (5th Cir. 1978) (*citing Porter v. United States*, 298 F. 2d 461, 464 (5th Cir. 1962)). *See also* Miss. Const. art. 3, § 14 ("No person shall be deprived of life, liberty, or property except by due process of law.").
>
> "Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks." *Littlejohn*, 593 So. 2d at 22. Because "[l]oyalty is an essential element in the lawyer's relationship to a client," the Mississippi Rules of Professional Conduct prohibit a lawyer's representing conflicting interests without knowing and informed consent from the client(s). Miss. R. Prof'l Conduct 1.7 & cmt. 2. If an impermissible conflict arises after the lawyer already has undertaken representation, the lawyer should withdraw from the case. Miss. R. Prof'l Conduct 1.7 cmt., 1.16. "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." *Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

*Kiker*, 55 So. 3d at 1065–1066 (¶¶ 13–14).

¶42. On June 27, 2013, David Futch, Rowsey's trial counsel, filed a motion to withdraw as Rowsey's counsel, stating that he had been "continually berated and harassed" by Rowsey

17

and that Rowsey had filed a complaint against him with the Mississippi Bar. Futch asserted that "the Defendant has filed numerous motions and filings and will not follow any guidance whatsoever from the attorney and has created such a state of conflict that the appointed attorney cannot effectively represent the best interest[s] of . . . [Rowsey] in any manner." Further, Futch averred that "[b]ased upon the attorney's and the Defendan[t]'s feelings and animosity against each other[,] . . . a conflict of interest has developed that is insurmountable."

¶43.  *Kiker* contemplates a situation in which counsel's loyalty is divided because he represents both the criminal defendant and a witness for the prosecution, an arrangement forbidden by the rules of professional conduct unless the criminal defendant makes an express waiver of the conflict. *Id.* at 1064-66. An actual conflict of interest is not at issue here. Instead, what is evident from the record is a personality conflict between the attorney and his client, not unlike the personality conflict which existed between Rowsey and his first appointed counsel. "Counsel is presumed to be competent. . . . An indigent criminal defendant is not entitled to expert counsel, or to counsel of his own choosing, but only to reasonably effective assistance of counsel." *Johnson v. State*, 476 So. 2d 1195, 1204 (Miss. 1985) (citing *Strickland*, 466 U.S. at 668; *Morris v. Slappy*, 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983)). In this case, Rowsey's attorney filed pretrial motions, performed an investigation into the case, filed a motion for Rowsey to receive a mental evaluation, cross-examined witnesses at trial, and made evidentiary objections. The personality conflict

between Rowsey and his attorney had no obvious effect on the quality of his attorney's representation at trial.

¶44. Because no actual conflict was at issue in this case, our decision in **Kiker** is inapplicable and Rowsey is not entitled to relief on that basis.

> **V.**     **Whether Rowsey was forced to testify at trial in violation of his constitutional rights.**

¶45. Rowsey also argues in his *pro se* brief that his trial counsel forced him to testify in his own defense.

¶46. The Fifth Amendment provides: " No person . . . shall be compelled in any Criminal Case to be a witness against himself." U.S. Const. amend. V. A similar right against self-incrimination exists in Article 3, Section 26, of the Mississippi Constitution.  Miss. Const. art. 3, § 26 ("[The accused] shall not be compelled to give evidence against himself."). The guarantee against testimonial compulsion, like other provisions of the Bill of Rights, "was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed." *Feldman v. United States*, 322 U.S. 487, 489, 64 S. Ct. 1082,  88 L. Ed. 1408 (1944), *overruled on other grounds by* **Murphy v. Waterfront Comm'n of New York Harbor**, 378 U.S. 52, 84 S. Ct. 1594, 12 L. Ed. 2d 678 (1964), *abrogated by* **United States v. Balsys**, 524 U.S. 666, 118 S. Ct. 2219, 141 L. Ed. 2d 575 (1998).

¶47. Without question, Rowsey had the right to remain silent, the right against self-incrimination, and, if he so chose, the right to forgo testifying in his own defense.  Also

19

without question, the only way Rowsey could claim the aggravated assault was committed in self defense was through his own testimony. Based on the record before us, there is no evidence that Rowsey was forced against his will by his attorney to testify. Moreover, it is axiomatic that this Court takes "a case on appeal as it comes to us in the record, and receive[s] no new evidence." *McGee v. State*, 40 So. 2d 160, 165 (Miss. 1949) (quoting *Pacific R.R. Co. of Mo. v. Ketchum et al.*, 101 U.S. 289, 25 L. Ed. 932 (1879)). Thus, given that no evidence in the record support his claim, Rowsey's argument that his attorney forced him to testify against his will in violation of his Fifth Amendment rights is without merit.

**VI. Whether the trial court erred in sanctioning Rowsey for filing his "Defendant's Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof."**

¶48. Next, Rowsey argues that, because he was granted leave to proceed in the trial court *in forma pauperis*, the trial court erred in sanctioning Rowsey the amount of the cost of a filing a fee for filing his "Defendant's Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof."

¶49. Mississippi trial courts have the power to sanction parties for frivolous filings, including frivolous filings by *pro se* litigants. *Ivy v. Merchant & Whaley*, 666 So. 2d 445, 451 (Miss. 1995); *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 118 (Miss. 1987). These sanctions "may take the form of monetary sanctions as well as appropriate restrictions on future filings. Such restrictions, however, must be appropriately tailored to redress the transgression found and to assure that valid claims will not be prohibited." *Ivy v. State*, 688 So. 2d 223, 224 (Miss. 1997).

20

¶50. In considering Rowsey's filing, also known as the "Defendant's Talleying [sic] of Some Legitimate Rules the Trial Court has Failed to Follow And Motion to Dismiss for the Violation/Error Thereof," the trial court held:

> Mr. Rowsey's motion is again written in wording that is disrespectful and insulting therefore pursuant to this Court's April 16, 2012 Order, Rowsey is hereby ordered to pay for the filing fee of this pleading.
>
> Future pleadings by Rowsey will not be filed by the Clerk unless accompanied by a filing fee. Any future pleadings containing disrespectful and vile language will be returned to Rowsey unfiled.

In turn, in its order dated April 16, 2012, the trial court held that "[t]he nature of Mr. Rowsey's complaint is written in wording that is disrespectful and abusive and will not be entertained by this Court. Any further pleadings containing this language will be returned to Mr. Rowsey and could possibly subject him to sanctions." Upon review of Rowsey's motion, we find that it was frivolous, disrespectful, and verbally abusive to the trial court. The trial court did not abuse its discretion in assessing Rowsey the cost of a filing fee for this motion as a sanction.

### VII. Whether the record on appeal is incomplete or tainted.

¶51. Finally, Rowsey claims that the record on appeal is incomplete, complaining that certain filings are absent from the record on appeal and that the record contains filings from other cases. However, we are limited to the record as it appears before this Court. *See McGee*, 40 So. 2d at 165. Even if Rowsey had indicated with particularity which pages are absent from the record, there is no way for this Court to establish their authenticity on direct

21

appeal. Furthermore, Rowsey fails to establish that these documents would have affected the outcome of his trial or appeal.

¶52.   It is true that there are two pages in the record that seem to correspond with another criminal defendant's case. Even if these pages were misfiled by the Greene County Circuit Clerk, Rowsey fails to articulate a legal theory which would entitle him to relief on this basis. Because they do not relate to him, these two pages simply do not impact the validity of Rowsey's conviction or sentence.

## CONCLUSION

¶53.   Rowsey does not raise an issue on appeal which would entitle him to appellate relief. We therefore affirm his conviction for aggravated assault and his ten-year sentence.

¶54.   **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY TO THE PANOLA COUNTY SENTENCE THE APPELLANT IS CURRENTLY SERVING. APPELLANT SHALL PAY ALL COURT COSTS TO THE GREENE COUNTY CIRCUIT COURT IN MONTHLY INSTALLMENTS IN THE AMOUNT OF $50 TO BEGIN SIXTY (60) DAYS FROM DATE OF RELEASE FROM CUSTODY AND CONTINUE UNTIL ALL COSTS ARE PAID IN FULL.**

**DICKINSON, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., LAMAR, KITCHENS AND CHANDLER, JJ. PIERCE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND RANDOLPH, P.J.**

**COLEMAN, JUSTICE, CONCURRING:**

¶55.   Our pronouncements on whether a claim of a violation of the right to a speedy trial may be waived by not obtaining an order after a motion or demand is filed unfortunately lack consistency and obfuscate the legal concepts of waiver and plain error. Accordingly, in the

hope that we can find some clarity in future opinions, I take the present opportunity to write to explain how my review and understanding of our precedential history on the subjects has led me to concur with today's majority.

¶56. The majority writes two things that I would like to address further. First, the majority would overrule **Kolberg v. State**, 829 So. 2d 29 (Miss. 2002), and **Wells v. State**, 160 So. 3d 1136 (Miss. 2015), to the extent that we held therein "that a defendant can waive his or her right to a speedy trial by failing to obtain a ruling on his or her motion for a speedy trial in the trial court." (Maj. Op. at ¶ 22). The right to a speedy trial certainly can be waived, if the waiver is knowingly and intelligently made. **Berry v. State**, 728 So. 2d 568, 570 (¶ 3) (Miss. 1999) ("However, the right to a speedy trial is a fundamental constitutional right, and a defendant may only waive her speedy trial right by knowing and intelligent waiver.") Presumably, given the context of the majority's statement, the majority would overrule **Kolberg** and **Wells** to the extent they hold that the right to a speedy trial can be waived when the defendant fails to obtain an order on his motion or demand for a speedy trial. (Maj. Op. at ¶ 22).

¶57. On the question of whether the right to a speedy trial can be so waived, we already have spoken and have spoken inconsistently. In **Craft v. State**, 832 So. 2d 467 (Miss. 2002), the defendant, Albert Junior Craft, "filed various motions and demands" for a speedy trial, but he failed to get a ruling until sentencing, when the trial court dismissed the motion as moot. **Id.** at 470 (¶ 5). Craft raised the issue on appeal in his *pro se* brief. **Id.** We found no violation of Craft's right to a speedy trial on two grounds, one of which was Craft's failure

23

to obtain a timely ruling on his demands. *Id.* at 471 (¶ 10). The *Craft* Court noted, much as Justice Pierce does in his dissent, that the failure to present the speedy-trial demand to the trial court in a timely enough manner to obtain a ruling barred the claim from consideration. *Id.* at 472 (¶ 12). Absent other controlling authority from the Supreme Court, Justice Pierce's suggestion that we hold Rowsey's contention barred absent a showing of plain error would appear correct – but other controlling authority is not absent. It should be noted that the *Craft* Court presented an alternative ground for its holding. The *Craft* Court also noted that Craft's contention lacked merit because he switched trial counsel several times before trial, and that delays caused by change of defense counsel will not be counted against the State. *Craft*, 832 So. 2d at 472 (¶¶ 12-15).

¶58. In at least two cases, the Supreme Court has issued opinions refusing to bar claims of speedy-trial violations from consideration when the defendant in question failed to obtain a ruling on his speedy-trial demand. In the more recent of the two, *Myers v. State*, 145 So. 3d 1143 (Miss. 2014), Edward Myers appealed a conviction for armed robbery. *Id.* at 1145 (¶ 1). Authorities arrested Myers on October 28, 2004. *Id.* at 1151 (¶ 21). In June 2005, he sent a letter to the court clerk requesting the status of his case and asking to be put on the "Court list." *Id.* He later filed a *pro se* motion to dismiss the charges against him for failure to provide a speedy trial. *Id.* The record, however, did not indicate that his motion had been served on the State. *Id.* In March 2006, Myers received court-appointed counsel. *Id.* On appeal, the State contended the speedy-trial issue was barred, because Myers did not obtain

24

a ruling from the trial court. *Id.* at 1151 (¶ 20). The *Myers* Court responded to the State's argument as follows:

> This argument is incorrect. The United States Supreme Court has rejected the notion that a defendant can waive the right to a speedy trial forever by failing to timely assert it. *Barker*, 407 U.S. at 528, 92 S. Ct. 2182. As this Court held in *Brengettcy v. State*, 794 So. 2d 987, 994 (Miss. 2001), "While failure or delay in raising a speedy trial claim may cost a defendant points in the *Barker* analysis, there is no procedural bar solely for failing to properly pursue the claim in open court." *See also Flores v. State*, 574 So. 2d 1314, 1323 (Miss. 1990) (holding that defendant's "failure to consistently badger the prosecution" to bring him to trial did not eliminate his speedy-trial claim). Therefore, we do not find Myers's constitutional speedy-trial claim to be procedurally barred.

*Id.*

¶59. In *Berry v. State*, 728 So. 2d 568 (Miss. 1999), a case that predates both *Myers* and *Craft*, the defendant, Merlinda Berry, filed a motion to dismiss for failure to provide a speedy trial. *Id.* at 570 (¶ 3). The trial court conducted a hearing the week before the trial, and after the hearing advised Berry's counsel that he could call the court on the following Monday to obtain the court's ruling. *Id.* However, the record before the *Berry* Court contained no ruling on the motion. *Id.* The *Berry* Court acknowledged the rule upon which both Justice Pierce's opinion today and the *Craft* Court relied – that the defendant bore the responsibility of obtaining a ruling on her motion. *Id.* (citing *Martin v. State*, 354 So. 2d 1114, 1119 (Miss. 1978) (applying procedural bar to motion to change venue)). However, unlike *Craft* and Justice Pierce's opinion, the *Berry* Court went on to consider the merits of Berry's speedy-trial assignment of error. *Id.* The Court wrote,

> [T]he right to a speedy trial is subject to a knowing and intelligent waiver. This Court will "indulge every reasonable presumption against the waiver of

25

a constitutional right." Even when a defendant fails to assert his right to a speedy trial he does not permanently waive this right.

We find that Berry did not waive her right to a speedy trial in this case. The trial court erred in failing to enter a ruling in the record on Berry's motion to dismiss. As a result, we must remand this case to the circuit court for further proceedings on this matter.

*Id.* (citations omitted). I find interesting – and important – two things. First, the Court flatly rejected the notion that Berry's speedy-trial claim could be waived for her failure to obtain a ruling on it. Second, and more striking, the *Berry* Court found the trial court in error *for not ruling* on Berry's motion to dismiss for lack of a speedy trial.

¶60.   As I review the above-described cases, today's majority, and Justice Pierce's separate opinion to try and determine what, in fact, the law is on the extent to which the failure to obtain an order on a speedy-trial demand affects one's right to appeal the issue, if any, it appears to me that the Court has too loosely used the word waiver in the speedy-trial context. The majority and Justice Pierce agree that both the *Myers* and *Kolberg* Courts misused the term – the majority writes that they should be overruled in part, and Justice Pierce that they need clarification. A waiver of a constitutional right results in its protection being forever lost to the one who waived it; to waive is "to abandon, renounce, or surrender." *Waive*, Black's Law Dictionary (10th ed. 2014). However, that Rowsey did not *waive* his right to assert a speedy-trial violation at some point in the future by failing to get the trial court to rule on his demand does not answer the question at the heart of the dispute between the majority and Justice Pierce, that is, whether we are constrained to review Rowsey's claim for plain error as per the latter. Waiver is a substantive event, in which a party knowingly and

26

intelligently gives up some right he otherwise would enjoy. Once a right is waived, it can offer no shelter again. Plain error is a mechanism created in response to the procedural bar of failing to raise an issue. Via plain error, an appellant gets the benefit of at least some review of an assigned error, even though he failed to preserve it for normal appellate review. We do ourselves, the bar, and litigants no favors by confusing such fundamentally different concepts. Because Rowsey did not waive his right to a speedy trial, its merits can in some way and at some time be considered. The questions are when, and under what standard may it be done.

¶61.    Without question, we have reviewed or considered reviewing assertions of the speedy-trial right for plain error, but in the cases I can find, we have done so only when the defendant did not raise the issue at all before the trial court. *Havard v. State*, 94 So. 3d 229, 237 (¶ 22) (Miss. 2012); *Dora v. State*, 986 So. 2d 917, 924 (¶ 16) (Miss. 2008); *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996). I have been unable to find a reported case wherein we considered a claim of the violation of the right to a speedy trial for plain error when the defendant raised the issue before the trial court but failed to obtain a ruling.

¶62.    Although the cases addressing appellate review of a speedy-trial demand that was made before the trial court but not ruled upon by the trial judge tell a different story, as often happens, they still do not give us a holding that clearly is applicable today. In both *Myers* and *Berry*, the Supreme Court found error other than that potential error related to the right to a speedy trial and, absent the speedy-trial issue, would have reversed and remanded the underlying convictions anyway. In *Myers*, the Court reversed and remanded for a new trial

because Myers's defense had been prejudiced by the erroneous exclusion of a witness. *Myers*, 145 So. 3d at 1150 (¶ 19). The opinion instructed the trial court to hold a hearing on Myers's speedy-trial claim before retrial. *Id.* at 1152 (¶ 24). Likewise, the **Berry** Court reversed and remanded for a new trial because of an error in the jury instructions and a **Brady** violation. **Berry**, 728 So. 2d at 571, 572-573 (¶¶ 9, 12).

¶63. Indeed, we have held several other times that, when a defendant claims a violation of his right to a speedy trial for the first time on appeal, the case can be remanded for a determination of the issue by the trial court rather than this Court analyzing the factors involved for the first time on appeal. In *McGee v. State*, 608 So. 2d 1129 (Miss. 1992), cited by the *Myers* Court, the defendant, Tom McGee Jr., argued that both his statutory and constitutional rights to a speedy trial were violated. *Id.* at 1131, 1134. McGee raised both at the trial level, and the trial court denied relief on both grounds. *Id.* The Supreme Court remanded both claims to the trial court for further consideration and, like *Myers* and *Berry*, also reversed and remanded on another issue. *Id.* at 1135. In *Barnes v. State*, 577 So. 2d 840 (Miss. 1991), the Court reversed Baxter Trent Barnes's conviction and remanded the case, holding that Barnes's right to effective counsel had been denied due to counsel's failure to raise the speedy-trial issue before the trial court. *Id.* at 844. The Supreme Court instructed the trial court to hold a hearing on the speedy-trial issue on remand. *Id.*

¶64. *Jasso v. State*, 655 So. 2d 30 (Miss. 1995), provides one of the only – if not the only – example of a case in which we reversed a judgment conviction and remanded a case solely because the Court determined that the defendant's contention of a speedy-trial violation

28

needed to be decided in the trial court. In other words, no other grounds for reversal, *e.g.*, jury instructions or improper exclusion of evidence, were held to be present. In fact, the *Jasso* Court reversed the judgment and remanded the case after determining that only one of the four *Barker* factors – actual prejudice – could not be determined on the appellate record. *Id.* at 35.

¶65. I have spent the time engaging in the above discussion to point out two things. First, our development of the law regarding how to handle a speedy-trial claim raised on appeal and raised at the trial court level, but not ruled upon by the trial court, has developed slowly and fitfully. In my opinion, a large part of the reason can be found in the Court's obfuscation of the doctrine of waiver with the procedural bar of failing to preserve an issue for appeal. As both the majority and Justice Pierce point out, waiver of a constitutional right can be made only in a knowing and intelligent fashion. I have chosen to join the majority in overruling *Kolberg* to the extent that the Court held Kolberg to have waived his right by not obtaining a ruling on his speedy-trial demand, because it is clear to me that the *Kolberg* Court indeed refused to consider the issue after finding it waived. *Kolberg*, 829 So. 2d at 88 (¶ 174) The *Kolberg* Court wrote as follows:

> As pointed out by the State, although Kolberg filed a motion to dismiss or prevent the second trial asserting speedy trial violations, there were no hearings or orders on these motions. Thus, Kolberg is not appealing to us from an erroneous decision of the trial judge. In *Rushing v. State*, 711 So. 2d 450, 456 (Miss. 1998), we stated: "It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and a failure to do so constitutes a waiver of the same." (citations omitted). *Accordingly, this assignment of error is without merit.*

29

*Id.* (emphasis added). The same is true of ***Wells***. ***Wells***, 160 So. 3d at 1146 (¶ 33). Accordingly, I agree that ***Wells*** should be overruled to the extent that it held a constitutional right can be waived by anything other than a knowing and intelligent waiver.

¶66. It should be noted that the motions that were waived by failing to obtain rulings in ***Rushing***, relied upon by the ***Kolberg*** Court, were evidentiary in nature. ***Rushing***, 711 So. 2d at 1998. In refusing to entertain the assignment of error because Rushing never obtained a ruling from the trial court, the ***Rushing*** Court did nothing to contravene the well-settled law that a waiver of a constitutional right must be knowing and intelligent. Neither the ***Kolberg*** Court nor the ***Wells*** Court discussed the earlier ***Berry*** case or the well-settled principle that constitutional rights can be waived only by knowing and intelligent action.

¶67. The second lesson I have learned by reviewing all of the above-discussed cases is that, in no instance that I could find, have we applied plain-error analysis to a claim that the State violated one's right to a speedy trial in response to the failure of the defendant in question to obtain a ruling after presenting the issue to the trial court. In fact, the ***Berry*** Court, in striking language, wrote, "*The trial court erred* in failing to enter a ruling in the record on Berry's motion to dismiss." ***Berry***, 728 So. 2d at 570 (¶ 3) (emphasis added). Arguably, the ***Berry*** Court's language, for purposes of speedy-trial claims anyway, removes the burden of obtaining a ruling from the defendant and places it upon the trial court. Moreover, the ***Myers*** Court wrote, "While failure or delay in raising a speedy trial claim may cost a defendant points in the Barker analysis, *there is no procedural bar solely for failing to properly pursue the claim in open court*." ***Myers***, 145 So. 3d at 1151 (¶ 20) (citing ***Brengettcy v. State***, 794

So. 2d 987, 994 (Miss. 2001)). If there is no procedural bar, then there is no resort to plain-error analysis.

¶68. For the above-described reasons, I concur in today's majority opinion.

**DICKINSON, P.J., LAMAR, KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**

**PIERCE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶69. Because Rowsey failed to seek a speedy-trial determination in the trial court, I would hold that his speedy-trial claim on appeal is subject to plain-error review. As this Court held in *Dora v. State*, 986 So. 2d 917 (Miss. 2008), when speedy-trial rights (whether constitutional or statutory) are raised for the first time on appeal, this Court can decide the issue only if we view it as plain error. *See id*. at 924-25 (citing *Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996)).

¶70. I agree with the majority that this Court wrongly employed the use of the term "waiver" in *Wells v. State*, 160 So. 3d 1136 (Miss. 2015), and *Kolberg v. State*, 829 So. 2d 29 (Miss. 2002), *overruled on other grounds by Harrell v. State*, 134 So. 3d 165 (Miss. 2014). What should have been said in those cases is that, by not obtaining a ruling in the trial court on a speedy-trial claim, the defendant failed to preserve the issue for appeal–thus relegating the claim to plain-error review. The majority incorrectly takes this to mean that I am suggesting *Wells* and *Kolberg* be overruled. Not so. Both cases simply used wrong terminology. This Court, however, was correct when it declined to address the speedy-trial claim(s) on appeal.

¶71.    The United States Supreme Court has never rejected the notion that failure to raise a speedy-trial claim in the trial court and/or pursue the claim to a hearing before the trial court subjects the claim to plain-error review on appeal.  What the Court rejected in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 101 (1972), was a very specific "demand-waiver" rule: one in which a defendant waives his right to a speedy trial as to any period prior to the time he demanded that his or her right be honored.  *Barker*, 407 at 524-25.  This was the recognized practice in most jurisdictions at the time, and the *Barker* Court viewed this particular approach to be too rigid.  As *Barker* explained,

> The demand-waiver doctrine provides that a defendant waives any consideration of his right to speedy trial for any period prior to which he has not demanded a trial.  Under this rigid approach, a prior *demand* is a necessary condition to the consideration of the speedy trial right.

*Barker*, 407 U.S. at 525 (emphasis added).  In rejecting the "demand-waiver" rule, *Barker* instead adopted the now-well-known balancing test, which is a fact-intensive inquiry for the trial court to conduct (as *Barker* alluded to throughout).  *See Barker*, 407 U.S. at 528-529 (explaining that this approach allows the trial court to exercise judicial discretion based on the circumstances).

¶72.    The federal courts have recognized this accordingly.  In *United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003), the Fifth Circuit reviewed for plain error the defendant's claim that his constitutional right to a speedy trial resulted in actual prejudice.  Similarly, in *United States v. Sorrentino*, 72 F.3d 294, 297 (2d Cir. 1995), the Second Circuit reviewed both statutory and constitutional speedy-trial claims for plain error where no motion to dismiss the indictment was ever filed.  Notably, the Second Circuit later overruled

32

*Sorrentino*, in part, in *United States v. Abad*, 514 F.3d 271 (2d Cir. 2008). *Abad* explained that, while unpreserved constitutional claims are subject to review for plain error, unpreserved Speedy Trial Act claims under 18 U.S.C. § 3162 are deemed waived in accordance with Section 3162(a)(2). *Id*. In *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995), the Tenth Circuit reviewed a constitutional speedy-trial claim under plain error where the issue was not raised at all before the district court. *See also United States v. McDaniel*, 484 631 F.3d 1204, 1209 n.2 (11th Cir. 2011) (applying plain-error review to constitutional speedy-trial argument not raised in district court); *United States v. Rice*, 746 F.3d 1074, 1082 (D.C. Cir. 2014) (same); *United States v. Green*, 516 Fed. Appx. 113, 124 (3rd Cir. 2013) (same); *United States v. O'Connor*, 656 F.3d 630, 643 (7th Cir. 2011) (same).

¶73. The majority finds that applying the plain-error standard to speedy-trial claims does not comport with *Myers v. State*, 145 So. 3d 1143, 1151 (Miss. 2014), and its dichotomy, and that it would prejudice the State. Hardly.

¶74. Under plain-error review, the appellant–not the State–bears the burden of showing not only that an error occurred but also that it resulted in either a manifest miscarriage of justice or seriously affected the fairness or public reputation of the judicial proceedings. *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006). If the appellant is able to demonstrate the likelihood of such, as occurred in *Myers*, 145 So. 3d 1143, then it would be proper for the reviewing court to remand the case to the circuit court for the purpose of allowing the State to present evidence explaining the delay and allowing the trial court to conduct a *Barker*

analysis. But if the appellant is unable to do so on appeal, as was the case in *Wells* and *Kolberg*, then the reviewing court may decline to entertain the matter on appeal.

¶75. It is important to remember that, with regard to speedy-trial claims, each case depends on the circumstances. Indeed, the Supreme Court was careful in *Barker* to reiterate so: "The right of a speedy trial is necessary relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. [But it] does not preclude the rights of public justice. *Barker*, 407 U.S. at 522 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S. Ct. 573, 49 L. Ed. 950 (1905)).

¶76. I agree with Justice Coleman that this Court has spoken inconsistently on the question of speedy-trial rights. This, no doubt, is due to the *Barker* decision itself, which the Supreme Court purposely left indefinite based on its recognition that "the right to speedy trial is a more vague concept than other procedural rights." *Barker*, 407 U.S. at 521. It is a right that is "amorphous," "slippery," and "necessarily relative." *Id*. at 522. And this Court, along with countless others, understandably had faltered in the past by failing to keep this in mind. Accordingly, I am cautious of our precedent in this area. For example, in *Brengettcy v. State*, 794 So. 2d 987, 994 (Miss. 2001), this Court failed to cite any authority for the proposition that "there is no procedural bar solely for failing to properly pursue [a speedy trial] claim in open court." All too often, *Barker* is either quoted or read out of context. (*see, e.g.*, *Brengettcy*, 794 So. 2d 987).

¶77. Again, the notion here is that *Barker* rejects the holding that failure to raise a speedy-trial claim in the trial court and/or pursue the claim to a hearing before the trial court,

34

subjects the claim to plain-error review on appeal. It does not. And, as mentioned, the federal courts have recognized so–particularly with the advent of *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993), where the Court reiterated the difference between "waiver" of a constitutional right and "forfeiture" of the same right. There, the Supreme Court explained that "waiver is the 'intentional relinquishment or abandonment of a known right.'" *Id*. (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Forfeiture, on the other hand, is failure to make the timely assertion of a right. *Id*. A valid waiver means there was no error, and there is nothing to review on appeal. *United States v. Cook*, 406 F.3d 485, 487 (7th Cir. 2005). A right that has been forfeited, however, may be reviewed for plain error. *United States v. Carrasco-Salazar*, 494 F.3d 1270 (10th Cir. 2007).

¶78.   This is consistent with *Sanders* and *Dora*. *See also* *Serna-Villarreal*, 352 F.3d at 231; *Sorrentino*, 72 F.3d at 297; *Abad*, 514 F.3d 271; *Gomez*, 67 F.3d at 1521; *McDaniel*, 484 631 F.3d at 1209 n.2; *Green*, 516 Fed. Appx. at 124; *Rice*, 746 F.3d at 1082; *O'Connor*, 656 F.3d at 643.

¶79.   Were this Court to take the position that defendants can always raise a speedy-trial claim on appeal regardless of failing first to present the claim in the trial court, defendants would have great incentive not to insist upon a speedy trial or assert a speedy-trial claim. This is because, under this approach, defendants can sleep on their rights below, possibly reap–at trial–benefits caused by the delay, then raise the issue for the first time on appeal if unsuccessful.

35

¶80.    But, by following in line with *Sanders* and *Dora*, making our plain-error standard applicable in such cases, defendants would be much less likely to try such a stratagem. Further, if the defendant brings his complaint to the trial court first, the trial court can grant the appropriate remedy before the expense and other burdens of a trial (and an appeal) have been incurred. This also allows the trial court to develop the record sufficiently for a *Barker* analysis, which in turn allows the appellate courts to assess the claim more accurately.

¶81.    For these reasons, I concur in the result reached by the majority.

   **WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION.**